**Raymond CORRAO, Plaintiff–Appellant,**

v.

**Donna E. SHALALA,\* Secretary of Health and Human Services, Defendant–Appellee.**

**No. 92–55581.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided Feb. 2, 1994.

As Modified on Limited Grant of Rehearing April 7, 1994.

---

\* Donna E. Shalala has been substituted for her predecessor, Louis W. Sullivan, as Secretary of

the Department of Health and Human Services. Fed.R.App.P. 43(c)(1).

Thomas Garrett Roche, Ernecoff & Roche, San Diego, California, for the plaintiff-appellant.

Donna W. Anderson, Department of Health & Human Services, San Francisco, California, for the defendant-appellee.

Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,** District Judge.

FLETCHER, Circuit Judge:

Raymond Corrao appeals the district court's grant of summary judgment in favor of the Secretary of Health and Human Services (the "Secretary"), who found that Corrao is not entitled to supplemental security income. We reverse.

## BACKGROUND

Raymond Corrao was born on March 16, 1938. He has a tenth grade education. On April 5, 1989, Corrao applied for supplemental security income ("SSI"), alleging disability due to mental illness, drug dependency, and lack of energy. Corrao's application indicates that his disabling condition began in 1950 and that this condition made him stop working in 1972.

Corrao's application was initially denied and was brought before an ALJ. At the hearing, Corrao testified that he uses 1½ grams of heroin on a daily basis and that he has used heroin for thirty-five years. He drinks several six packs of beer and a half pint of whisky daily. He has lost consciousness on many occasions and has lost jobs due to his drug and alcohol problem. Corrao leaves his home daily to go to the methadone treatment clinic, where he is tested for drug usage. Although he would be permitted to take methadone home if he tested clean for drugs, he has never tested clean.

Corrao testified that he obtains the heroin he uses by purchasing heroin for others and receiving some of the purchased drugs in return. He purchases up to $600 worth of heroin daily for up to three people per day. In return, he receives approximately 1½ grams of heroin in total, worth about $150 per day. This heroin is consumed by Corrao. To obtain the heroin, Corrao has his clients pick him up and he directs them to a given location. The clients wait for him to complete his purchase and then return him

home. The entire transaction takes approximately thirty to forty-five minutes.

Both Corrao's former parole officer and a medical expert testified at the hearing. Mr. Snedden, the parole officer, stated that Corrao has difficulty getting along with people, has frequent outbursts, and has not maintained employment due to his problems accepting authority figures. Dr. Wilson, the medical expert, testified that Corrao's heroin intoxication was ongoing and that in his opinion, Corrao's behavior and characteristics met the regulatory requirements for listed impairments due to substance abuse. The administrative record also contains psychiatric evaluations from several doctors, all of whom diagnosed heroin intoxication or addiction in addition to other secondary personality disorders.

On June 25, 1990, the ALJ found that Corrao was not disabled within the meaning of the regulations. This decision became the final decision of the Secretary when the Appeals Council declined to review the ALJ's decision on January 1, 1991. Corrao then commenced this proceeding in federal district court. The district court upheld the Secretary's final decision, granting the Secretary's motion for summary judgment in an order and judgment entered on February 21, 1992 and February 27, 1992, respectively. Corrao timely appealed the district court's denial of his claim.

## JURISDICTION AND STANDARD OF REVIEW

The district court exercised jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). We have jurisdiction of the appeal pursuant to 28 U.S.C. § 1291.

We review the propriety of the district court's grant of summary judgment de novo. *Jones v. Union Pac. R. Co.*, 968 F.2d 937, 940 (9th Cir.1992). Whether illegal activity may constitute substantial gainful activity is a construction of agency regulations that we review de novo. *Dotson v. Shalala*, 1 F.3d 571, 575 (7th Cir.1993). In determin-

** Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

ing whether the district court was correct in upholding the Secretary's decision to deny Corrao SSI, we review the Secretary's decision to ensure that the Secretary applied the correct legal standards and the entire administrative record to ascertain whether its findings are supported by substantial evidence. *Young v. Sullivan,* 911 F.2d 180, 183 (9th Cir.1990).

## DISCUSSION

In determining whether a claimant is disabled, the Secretary follows a five-step sequential evaluation process. 42 U.S.C. § 1382c(a)(3); 20 C.F.R. § 416.920 (1993); *Pitzer v. Sullivan,* 908 F.2d 502, 504 (9th Cir.1990). First, the Secretary must determine whether the claimant is currently performing "substantial gainful activity"; if so, the claimant will be found not disabled "regardless of [his] medical condition or [his] age, education, and work experience." *See* 20 C.F.R. §§ 416.920(a) & (b) (1993). If the claimant is not performing substantial gainful activity, the Secretary will determine whether the claimant has a severe impairment. If there is no severe impairment, the Secretary will find that the claimant is not disabled. 20 C.F.R. § 416.920(c) (1993). If the claimant has an impairment that meets or is equivalent to an impairment listed in the regulations, the claimant is considered disabled. 20 C.F.R. § 416.920(d) (1993). If the claimant does not have such a listed impairment, the Secretary considers whether the impairment, when considered along with other factors, prevents the claimant from doing past work. The Secretary finally considers whether the claimant can perform other work. 20 C.F.R. §§ 416.920(e) & (f) (1993). If the Secretary finds that a claimant is disabled or is not disabled at any point in this process, the review process is terminated. *See* 20 C.F.R. § 416.920 (1993).

In the present case, the Secretary determined that Corrao's activities in procuring heroin constitute "substantial gainful activity" within the meaning of the regulations,

and thus that Corrao is not disabled. The Secretary alternatively concluded that even if these actions are not considered substantial gainful activity, the nature of the activities Corrao performs demonstrate that "he has the physical and mental stamina necessary to run a business and no evidence of a 'severe' impairment." (Admin. Record at 11). We disagree with both of these conclusions.

I. *Illegal activities as substantial gainful activity*

■ On appeal, the Secretary contends that the illegal nature of Corrao's activities does not affect their characterization as substantial gainful activity ("SGA"). Whether illegal activities may be considered SGA is an issue of first impression in our circuit.

The Secretary argues that the fact that an activity is illegal is not a sufficient reason to exempt it from the reach of civil law. She also argues that the claimant's motive is irrelevant to the concept of whether he is earning income, and that it is against public policy to grant SSI benefits to those who obtain income illegally.

The only federal circuit court to address this issue is the Seventh Circuit, which held that illegal activity can constitute SGA. *Dotson v. Shalala,* 1 F.3d 571, 576 (7th Cir. 1993).[1] The *Dotson* court properly noted that the regulatory definition of SGA does not distinguish between legality and illegality, but instead focuses on the nature of the claimant's activities. Specifically, an activity must be both "substantial" and "gainful." *See* 20 C.F.R. § 416.972 (1993). Work activity is "substantial" if it "involves doing significant physical or mental activities." *Id.* at § 416.972(a) (1993). It is "gainful" if it is "the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* at § 416.972(b) (1993). The claimant's activities need only be of the type that normally results in pay or profit. Conceivably, the claimant's activities may be gainful even if the claimant does not earn income. 20 C.F.R. § 416.972(b) (1993); *Callaghan v.*

---

1. The few federal district courts that have addressed this question have agreed that illegal activity may form the basis of a finding of SGA. *See Hart v. Sullivan,* 824 F.Supp. 903 (N.D.Cal. 1992); *Bell v. Sullivan,* 817 F.Supp. 719 (N.D.Ill. 1993); *Jones v. Sullivan,* 804 F.Supp. 1045 (N.D.Ill.1992).

*Shalala,* 992 F.2d 692, 695–96 (7th Cir.1993) (financially unsuccessful sandwich shop business and upholstery business are gainful activities). Because the regulations require an ALJ to focus on the nature of the claimant's activities and the skills required to perform them, the *Dotson* court concluded that whether activities are illegal is irrelevant to the analysis.

We agree with the Seventh Circuit's analysis that nothing in the regulations suggests that illegal activity cannot be SGA. To the contrary, there clearly exist illegal activities that are both "substantial" and "gainful." Tax fraud, for example, involves significant mental activity, and the completion of tax forms is an activity that normally results in a benefit to the individual completing the forms. As a matter of policy, we see no reason to prefer claimants who earn a living by illegal means over those who survive without violating the law by suggesting that the illegal activity is neither substantial nor gainful. *See Dotson,* 1 F.3d at 576.

Our conclusion that illegal activity can constitute SGA receives support from the principle in taxation law that unlawful earnings are considered taxable "gross income." *See id.* at 577. The tax laws clearly recognize that it is incongruous to have "the gains of the honest laborer taxed and the gains of the dishonest immune." [2] *Id.* (citing *James v. United States,* 366 U.S. 213, 218, 81 S.Ct. 1052, 1055, 6 L.Ed.2d 246 (1961)).

Corrao argues that the proper distinction is not between illegal and legal activities, but between addicted individuals and other individuals. He argues that because Congress intended to award SSI to individuals who suffer from substance abuse, and because an individual must obtain an addicting substance to be addicted, to use the purchase of the substance to deny SSI benefits defeats the purpose of the statute.

We agree with Corrao that a primary concern of Congress in providing for SSI was to help individuals who suffer from disabling

addictions. However, Congress also provided that *no* individual who is capable of performing SGA is entitled to SSI, even if the individual suffers from a mental or physical disability. 42 U.S.C. §§ 1382c(a)(3)(A) & (B). Thus, we understand the correct focus of the analysis to be whether an individual is capable of performing substantial and gainful activity, not whether the individual is addicted. Some addicted individuals, such as an attorney who suffers from cocaine addiction, may be capable of performing substantial and gainful work within our economy. While their condition is undeniably tragic, the fact that they are still able to function within our society indicates that they are not disabled for SSI purposes. Other addicts, however, may be so overwhelmed by their addiction that they are unable to function within our society. It is the latter group that should be considered disabled for the purposes of awarding SSI.

Because the regulations make no distinction between legal and illegal activities, and because such a distinction would conflict with the purposes of SSI, we conclude that illegal activity can be considered substantial gainful activity.

## II. *Sufficiency of the evidence to find SGA*

■ Because we conclude that illegal activity may be substantial gainful activity, we must review the ALJ's determination that Corrao is engaged in SGA to determine if it is supported by substantial evidence in the record. *Young v. Sullivan,* 911 F.2d at 183.

■ Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full or part-time basis, and is the "kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 416.972(a) & (b) (1993). Activities that include taking care of oneself, hobbies, therapy, and household tasks are not considered SGA. 20 C.F.R. § 416.972(c) (1993).

**2.** We also note that the tax code's definition of "gross income" was adopted by the Social Security Act for the purposes of determining whether the claimant's income is sufficiently low to make her eligible for SSI benefits. 42 U.S.C.

§ 1382(d). If illegal gains are taxable under the Internal Revenue Code, it is reasonable to conclude that illegal activities may be SGA under the Social Security Act.

The regulations establish a presumption of SGA if the claimant earned more than $300 a month in 1989 or $500 a month in 1990. *See* C.F.R. §§ 416.974(b)(2) & 416.975(a)(2)(c) (1993); *Keyes v. Sullivan,* 894 F.2d 1053, 1056 (9th Cir.1990).[3] The presumption is rebuttable by the claimant. *See, e.g., Dotson,* 1 F.3d at 576; *Dugan v. Sullivan,* 957 F.2d 1384, 1390 (7th Cir.1992); *Keyes,* 894 F.2d at 1056.

The Secretary found that Corrao acquired approximately $150 worth of heroin daily, or about $4,200 of heroin a month, well over the regulatory baseline. The ALJ concluded that this earning level, in conjunction with the fact that Corrao was, in effect, running a sole proprietorship in drug dealing and performing services significant to that business, establish that Corrao performed SGA.

While it is clear that Corrao's "income" establishes a presumption that he is engaged in SGA, these guidelines are only a presumption and " 'do not relieve an ALJ of the duty to develop the record fully and fairly.' " *Dotson,* 1 F.3d at 576 (quoting *Dugan,* 957 F.2d at 1390) (citations omitted). For activity to constitute SGA, it still must involve "significant physical or mental activities" and must be the type of work usually done for pay or profit. 20 C.F.R. §§ 416.972(a) & (b).

■ In considering whether the presumption is rebutted, the factors to be considered include the responsibilities and skills required to perform the work, the amount of time the individual spends working, the quality of the individual's work, special working conditions, and for individuals who are self-employed, the value of their work to the business. *See* 20 C.F.R. §§ 416.973–416.976; *see, e.g., Katz v. Secretary of Health & Human Servs.,* 972 F.2d 290, 293 (9th Cir.1992); *Keyes v. Sullivan,* 894 F.2d at 1056. Consideration of these factors leads us to conclude that Corrao was not engaged in SGA.

First, Corrao spent only a minimal amount of time working. The record reflects that when one of Corrao's purchasers was interested in obtaining drugs, he would contact Corrao. The individual would pick up Corrao, drive him to the purchase area, wait for a few minutes while the transaction was performed, and drive Corrao home. The entire activity, including the car ride, took only twenty-five to forty-five minutes.

While the regulations clearly provide that part-time work may be considered "substantial," 20 C.F.R. § 416.972(a), substantial work must involve more time than Corrao invested. *See Katz,* 972 F.2d at 292 (twenty hours per week may be substantial); *Keyes,* 894 F.2d at 1056 (approximately twenty-five hours a week may be substantial). Rather than working several hours a day, Corrao's activities consumed less than an hour a day, the vast majority of which was spent riding as a passenger in a car. Such slight work performed for minimal periods of time is not substantial gainful activity. *See Kornock v. Harris,* 648 F.2d 525 (9th Cir.1980) (individual with ability to work several hours daily and only with interruptions due to asthma could not engage in SGA); *Cornett v. Califano,* 590 F.2d 91, 94 (4th Cir.1978) (ability to work intermittently as dictaphone transcriber a few hours daily at home is not ability to engage in SGA).

Even more significant to our holding is our conclusion that Corrao's activities did not require any significant mental or physical exertion. Corrao did no planning prior to these purchases, but instead was contacted by purchasers when they desired some drugs. Corrao did not organize drug dealers, nor did he have an organized or extensive clientele. Instead, the record reflects that two or three people asked him to purchase drugs for them. Corrao did not use his own money for the transactions but was

---

**3.** The Social Security Act provides for the payment of Disability Insurance Benefits to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 *et seq.,* and for the payment of SSI to disabled persons with low income. 42 U.S.C. § 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571–76, 416.920 & 416.971–76. Our opinion therefore relies on cases applying both sets of regulations. *See Dotson,* 1 F.3d at 574; *Fanning v. Bowen,* 827 F.2d 631, 632 n. 1 (9th Cir.1987).

provided with funds by the ultimate purchaser. Finally, although the Secretary found that Corrao received uncut heroin and used his physical and mental capacities to "cut" it (i.e., to add other substances to it), the record does not support such a finding. Corrao in fact testified that he purchased uncut heroin and gave it directly to the ultimate purchasers. (Admin.Record at 28–30). There is no indication that he ever sold his portion of the drugs for cash or other items. In sum, there is no indication of initiative, organization, responsibility, or physical or mental exertion by Corrao as is required for SGA.

The regulations establish a presumption of SGA for self-employed individuals who render services significant to their business's operation and who receive a substantial income from the business. *See* 20 C.F.R. § 416.975(a)(3). If one has a sole proprietorship, all services rendered are significant to the business. *See* 20 C.F.R. § 416.975(b)(1). The Secretary applied this section finding that Corrao is engaged in SGA because his activities constitute a sole proprietorship and because all of his activities were significant to his business. We disagree.

The Secretary's regulations clearly anticipate their application in the traditional employment context, rendering them difficult to apply in the context of illegal drug purchases. Nevertheless, we cannot agree that Corrao's limited and periodic efforts to obtain heroin constitute a sole-proprietorship in any sense of the word. The concept of a sole proprietorship suggests a business in which the owner invests time and capital, uses management or organizational skills, and hires employees. *See* 20 C.F.R. § 416.975(b). Corrao did not have employees, manage other workers, or invest his own capital or the capital of others in a potentially profit-making venture. Therefore, he did not act in any sense to operate an ongoing business. Because Corrao did not operate a business, his services were not "significant" within the meaning of the regulations for self-employed claimants.

III. *Severity of Corrao's substance addiction*

█ Because we conclude that Corrao was not engaged in SGA, we must next address the Secretary's alternative finding that Corrao is not disabled because he does not have a severe impairment.

The severity requirement clearly serves the purpose behind the Social Security Act of awarding SSI only to those claimants whose impairment is severe enough to render them unable to work in our economy. The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the Secretary to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered. *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

An overly stringent application of the severity requirement, however, violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *See Yuckert,* 482 U.S. at 156–58, 107 S.Ct. at 2299–300 (O'Connor, J., concurring) (cautioning that facially valid regulation should not be applied to deny benefits to the disabled); *Farris v. Secretary of Health & Human Servs.,* 773 F.2d 85, 89 (6th Cir.1985) (same). In order to standardize applications of the severity requirement, the Secretary promulgated interpretive guidelines, which state that an impairment may be found not severe only when evidence establishes a " 'slight abnormality' " that has " 'no more than a *minimal effect* on an individual's ability to work.' " *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir.1988) (citing Social Security Ruling 85–28, 1985 WL 56856, *3, 1985 SSR LEXIS 19, *7 (1985) (emphasis added)); *see also Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir. 1989) (stating that the sequential evaluation process can be terminated at step two only in cases where there is no more than a minimal effect on the claimant's ability to work).

In analyzing a mental impairment such as Corrao's substance abuse addiction, the Secretary must consider the evidence in the case record—the mental status examination and psychiatric history. *See* 20 C.F.R. § 916.-920a(b). In concluding that Corrao does not suffer from a serious impairment, the ALJ failed to consider any of the expert medical

testimony, and cited absolutely no evidence to support her conclusion that Corrao's disability is not severe.

We review the record as a whole to determine if substantial evidence supports the ALJ's conclusion that Corrao is not disabled. Both Corrao's personal history and the credible medical testimony and reports clearly support the view of this panel that Corrao suffers from a severe impairment and is disabled within the meaning of the Social Security Act.[4]

Corrao has been hopelessly addicted to heroin for over thirty years and suffers from documented personality disorders. He consumes over twelve beers and a half pint of whisky daily. He has absolutely no relevant work experience and has been unable to hold a job since 1972 due to his uncontrollable addictions and outbursts. Because of his addictions, Corrao is periodically subject to periods of unconsciousness. Attempts to treat Corrao's substance addiction with methodone have been unsuccessful.

At the hearing, the medical expert Dr. Wilson testified that Corrao suffers from moderate restrictions in his ability to perform the activities of daily living. He suffers from marked restrictions in his ability to maintain social functioning, and his deficiencies in concentration would result in frequent failure to complete tasks in a timely manner. Finally, Dr. Wilson indicated that in a work-like setting Corrao would suffer from repeated episodes of deterioration, which would cause him to withdraw from that situation. This testimony combined with Corrao's personal history indicate that Corrao's heroin addiction clearly meets the requirements for listed impairments such that he is disabled within the meaning of the Social Security Act.[5] 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.09; 20 C.F.R. §§ 916.920a & 916.925 (1993).

## CONCLUSION

Because we find that Corrao is disabled within the meaning of the regulations, we reverse the district court's order and remand to the district court for remand to the Secretary with instructions to make a determination of whether he meets the income and resources requirements for the award of benefits.

**REVERSED and REMANDED.**

---

4. "When we reverse an ALJ's findings on the ground that they are not supported by substantial evidence, we must decide whether to remand for further development of the record." *Ceguerra v. Secretary of Health & Human Servs.*, 933 F.2d 735, 740 (9th Cir.1991). In this case, as in *Ceguerra*, the record is sufficiently complete to resolve Corrao's contention that he is disabled. *Id.* *There is no need to further develop the factual record because a certified board psychiatrist testified at Corrao's hearing about Corrao's mental condition.*

5. The ALJ relied on several reports to conclude that Corrao is not severely disabled. These written reports, however, do not support such a conclusion. The reports recognize that Corrao suffers from heroin addiction, anti-social personality disorder, and has an impaired ability to relate to others. Even if, as the reports recognize, Corrao can perform simple repetitive tasks and understand instructions during a short interview, we cannot understand how such abilities render a heroin-addicted individual with documented personality disorders not severely disabled. Because Corrao's addiction clearly has more than a minimal impact on his ability to work, *see Yuckert*, 841 F.2d at 306, his disability cannot be considered not severe within the meaning of the Social Security Act.