**Cathy M. COE, Plaintiff—Appellant,**

v.

**Michael J. ASTRUE, Social Security Administration, Defendant—Appellee.**

No. 07–35937.

United States Court of Appeals, Ninth Circuit.

Submitted April 15, 2009.*

Filed July 14, 2009.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2)(C).

Don Edgar Burris, Esquire, Billings, MT, for Plaintiff–Appellant.

Dorrelyn K. Dietrich, Esquire, SSA–Social Security Administration, General Counsel's Office, Region VIII, Denver, CO, for Defendant–Appellee.

Before: B. FLETCHER, TASHIMA, and THOMAS, Circuit Judges.

## MEMORANDUM **

Cathy Mae Coe ("Coe") appeals the district court's judgment affirming the final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.[1]

In July 2004 Coe developed pseudotumor cerebri, a syndrome associated with elevated intracranial pressure, and began to experience progressive and rapid vision loss. In August 2004 her doctors performed a lumbar puncture and implanted a catheter and a shunt in her head to relieve the pressure on her brain. Prior to surgery, she sustained significant damage to her optic nerves and now has irreparable optic atrophy in both eyes. Coe suffers from blurry vision, acute light sensitivity, dizziness, headaches, and persistent fatigue. She also has a twenty-year history of depression.

Coe testified that she cannot concentrate on an activity for more than an hour or two without experiencing severe fatigue, and related that words on a page or computer screen often become wavy and begin to "dance." When asked how many hours out of an ordinary eight hour work day she would have to spend resting, Coe replied "four to six." When asked whether she would require four to six hours of rest even if her job responsibilities did not involve reading or focusing on a computer screen, she replied that she would, noting that the headaches and fatigue that accompany her blurry vision make it difficult to focus on any single task without long intermittent periods of rest.

Coe has previous work experience as a collection clerk, receptionist, data entry

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The district court's decision upholding the denial of social security benefits is reviewed de novo. *Gillett–Netting v. Barnhart,* 371 F.3d 593, 595 (9th Cir.2004). "The Commissioner's denial of benefits may be set aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record." *Id.*

clerk, and statement clerk, but has not worked since the onset of her pseudotumor cerebri in July 2004. Since that time, she has been taking adult education courses at a vocational center and has completed one semester of full-time course work at Montana State University–Billings ("MSU–B").

After determining Coe's residual functional capacity ("RFC"), an administrative law judge ("ALJ") concluded that she was capable of performing her past work as a statement clerk, thus directing a finding of no disability. *See Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir.1994). Coe disputes that conclusion, contending that the ALJ committed legal error by disregarding her subjective account of her symptoms, resulting in an RFC that overstates her abilities.

■ A claimant must clear two hurdles to corroborate subjective testimony regarding the severity of symptoms. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160–61 (9th Cir.2008). First, the claimant must produce objective medical evidence of the impairments at issue. *Id.* at 1160. Next, the claimant must show that her medically determinable impairments could reasonably be expected to produce *some degree* of the symptoms of which the claimant complained. *See Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996).

The ALJ determined that Coe had provided objective medical evidence of two severe impairments, her impaired vision and depression, and that those impairments could reasonably be expected to produce some degree of the symptoms she reports. Thus, because the ALJ found no evidence of malingering, he was permitted to disregard her testimony about the symptoms' severity only by offering specific, clear, and convincing reasons for doing so. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007); *cf. Smolen*, 80 F.3d at

1282 (noting that the experience of fatigue is "highly subjective and idiosyncratic").

The ALJ cited several reasons for disbelieving Coe's testimony: (1) one of her treating opthalmologists (Dr. Keenum) stated that she did not believe Coe would qualify for disability on the basis of her impaired vision alone; (2) another treating opthalmologist (Dr. Good) reported that Coe is "not totally disabled," and has a best corrected vision of 20/40 in her right eye and 20/30 in her left eye; (3) a Montana Disability Determination Services ("DDS") psychologist that examined Coe deemed her capable of sustaining low-stress work activity; and (4) Coe's daily activities are inconsistent with her account of her symptoms.

■ The ALJ's reasons for disbelieving Coe cannot be called specific, clear, and convincing. First, the ALJ noted that two opthalmologists that treated Coe stated, in essence, that they doubted she would qualify for disability benefits on the basis of her impaired vision. The opthalmologists' conclusory comments do not amount to a clear reason for disregarding Coe's testimony. Assessment of disability involves a multi-step legal inquiry that takes into account *all* of a claimant's physical and mental impairments, as well as the claimant's age, education, and work experience. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. §§ 404.1520, 416.920. Neither opthalmologist was in a position to conduct that inquiry, nor is it clear how their statements contradict Coe's description of her symptoms.

Rather than undermining Coe's testimony, Dr. Good's assessment of her symptoms actually reinforces it. Dr. Good stated that the discrepancy between the fields of vision of each of her eyes leads to frequent blind spots, blurriness, and dizzi-

ness. Further, Dr. Good reported that Coe was capable of performing daily activities even with her impaired vision, but because of her symptoms, would experience "significant fatigue in doing so." In sum, Dr. Good's assessment of Coe's symptoms is not inconsistent with her allegations of persistent fatigue requiring a substantial period of rest following one to two hours of concentrated activity.

Next, the ALJ relied on a DDS psychologist's written evaluation stating that Coe's depression is adequately controlled and that she is capable of performing low-stress work activity. As the ALJ noted, it is not clear from the record whether the fatigue that Coe complains of is a symptom of her depression, impaired vision, or some combination. Thus, the fact that her depression, standing alone, is adequately controlled is not a clear and convincing reason for disregarding her account of her symptoms.

■ The ALJ also concluded that Coe's daily activities were inconsistent with her description of her symptoms. An ALJ "may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting." *Smolen,* 80 F.3d at 1284 n. 7. Many activities, however, "may not be easily transferable to a work environment where it might be impossible to *rest periodically* or take medication." *Id.* (emphasis added).

Both the ALJ and the district court cited Coe's successful completion of college course work as a reason for disbelieving her account of her symptoms. Coe's academic activities, however, are fully consistent with her claim that she suffers severe fatigue, dizziness, and headaches after approximately one to two hours of concentrating on a single activity. She testified that classes are never longer than an hour and a half, she pushes herself hard to get through them, and then she goes home to rest. Similarly, Coe testified that she performs chores around the house and runs routine errands, but all in the context of long periods of rest to alleviate fatigue and headaches.

■ The ALJ failed to state specific, clear, and convincing reasons for disbelieving Coe's testimony, and in so doing, committed legal error. Further, the ALJ's determination of Coe's RFC relies on the flawed credibility determination, and thus fails to factor in the full extent of her impairments.

For the foregoing reasons, the judgment of the district court is reversed and the case remanded with instructions to remand to the Commissioner for further proceedings consistent with this disposition.[2]

**REVERSED and REMANDED.**

---

**2.** Coe also raises a number of other contentions which we, like the district court, reject as meritless.